HAGGERTY, APPELLEE, *v.* SQUIRE, SUPT. OF BANKS, APPELLANT, ET AL.

(Decided September 27, 1939.)

*Messrs. Horwitz, Kiefer & Harmel, Messrs. Rocker & Schwartz, Messrs. Buckingham, Doolittle & Thomas* and *Mr. George B. Harris,* for appellee.

*Mr. Thomas J. Herbert,* attorney general, *Mr. Harold H. Gorman, Mr. Eugene S. Lindemann, Mr. Charles F. Carr* and *Mr. Edwin W. Brouse,* for appellant.

STEVENS, J. Harry W. Haggerty, as plaintiff, filed an action in the Court of Common Pleas of Cuyahoga county against S. H. Squire, Superintendent of Banks, in charge of the liquidation of the Union Trust Company, the Union Trust Company, and the Cleveland

Trust Company, as defendants, seeking to set aside certain transactions in connection with a trust of which the Union Trust Company was trustee; also to procure the restoration of the corpus of the trust to the Superintendent of Banks for liquidation, for a money judgment in the amount of the sales price of all outstanding land trust certificates issued in pursuance of that trust, for allowance of a claim as general creditor of the Union Trust Company in the amount of the sales price of all outstanding land trust certificates, for the appointment of a receiver to disburse the liquidating dividends upon the general creditors' claims, when allowed and paid, and for equitable relief.

The suit was brought as a class suit, and, as a condition precedent thereto, plaintiff presented to the Superintendent of Banks, for allowance, not only his own claim in the amount of the sales price of the certificates purchased by him, but, combined therewith, a claim for all other certificates, in the aggregate amount of all certificates sold in pursuance of the trust.

Upon rejection of this claim by the Superintendent of Banks, plaintiff filed his petition, asserting that he brought the action "not only upon his own behalf, but on behalf of all the certificate holders of said purported trust."

The petition bottoms the claim to the relief sought upon two grounds:

"1. The statutes of Ohio do not authorize, and, during all of the time herein referred to, did not authorize, the Union Trust Company to act in the dual capacity of settlor and trustee by creating a trust out of its own property and selling certificates representing interests therein to the public, all of which the Union Trust Company did or attempted to do in creating and administering the purported trust herein described.

"2. Such undertakings are opposed to sound public policy and are invalid."

In the trial court, the relief sought was granted, and an appeal by the defendant Superintendent of Banks upon questions of law and fact has lodged the cause in this court.

A hearing *de novo* before a special master commissioner appointed by this court was had, and a transcript of the evidence, the report of the master commissioner, together with his findings of fact and conclusions of law, the briefs of counsel, and the motion of appellee to confirm the report of the master and enter judgment in accordance therewith, are before us.

At the hearing in this court, counsel agreed that the court might dispose of the case upon the motion, or might disregard the motion and dispose of the case upon the evidence taken by the master, the same as if that evidence had been presented to the court, which, of course, this court has a right to do without consent of counsel.

Much incompetent and irrelevant evidence was permitted to be introduced before the master, but from the transcript the following facts appear:

Prior to 1926, the Ontario Street Land Company, an Ohio corporation, resident of Cleveland, Ohio, in the regular course of its business borrowed from the Union Trust Company various sums of money, which loans were in most instances secured by what have been termed "holding title agreements." Under these agreements, the bank held the legal title to certain real estate as security for the repayment of the money loaned by it, but the equitable title remained in the Ontario Street Land Company.

In the summer of 1923, the land company borrowed $130,000 from the Union Trust Company, to purchase six sublots located on Carnegie avenue in the city of Cleveland, and caused the title to the lots to be

conveyed to the Union Trust Company under a holding title agreement. By the terms of that agreement, the bank agreed to hold title to the property as security for the repayment of the loan, and, upon its repayment, to convey the premises in accordance with instructions issued by the land company.

In 1924, the premises which secured the $130,000 loan were leased to Thomas Cusack upon a lease providing for a lease rental of $14,000 a year. Cusack later assigned that lease to the Carnegie-Twelfth Company, a subsidiary of the General Outdoor Advertising Company, which latter company then expended $100,000 in the construction of buildings thereon.

The $130,000 loan was thereafter paid, and later other sums borrowed by the land company, which were repaid from a loan of $240,000 made by the bank to the land company in July of 1926. This latter loan was secured by a holding title agreement on not only the Carnegie avenue property but also on two other parcels of real estate, designated as the Oregon avenue and Sumner properties.

Prior to October, 1926, upon written instructions from the land company, an indenture of trust and land trust certificates were prepared by attorneys, and in their preparation the officials of the Union Trust Company collaborated. The corpus of the trust was the Carnegie avenue property. Later an agreement in writing was consummated between the Ontario Street Land Company and the Phillip H. Collins Company, a brokerage concern, whereby the latter company agreed to purchase the entire issue of the land trust certificates (456) at a price of $216,000.

An escrow agreement was executed, which does not appear in the evidence, but the transcript does disclose that, upon written instructions from the land company, the Union Trust Company, which had theretofore held the legal title to the Carnegie avenue property as trustee for the Ontario Street Land Company and as

security for the payment of the money owing to it by that company, conveyed to itself, as trustee, under the indenture of trust heretofore referred to, the legal title to the Carnegie avenue property. Thereafter, in pursuance of written instructions to that effect, the Union Trust Company issued certificate No. 1 under the indenture of trust for all of the fractional interests (456) in favor of the Ontario Street Land Company, which company caused the certificate to be endorsed to the Phillip H. Collins Company upon that company paying into the escrow at the Union Trust Company the sum of $216,000, to be disbursed upon the order of the Ontario Street Land Company.

Thereupon, and again in pursuance of written instructions, certificate No. 2 for all of the fractional interests was issued by the bank, as trustee, to the Phillip H. Collins Company.

Between October 19, 1926, and June 1, 1927, the Phillip H. Collins Company sold various interests in the land trust to numerous persons, among whom was the plaintiff, Haggerty, who purchased 30 interests for $15,150.

From the amount of $216,000, paid into the escrow with the Union Trust Company by the Phillip H. Collins Company for all of the fractional interests, the Union Trust Company, upon the order of the Ontario Street Land Company, paid to itself, to apply upon the loan of $240,000 owing to it by the Ontario Street Land Company, the sum of $150,000, which the Union Trust Company had agreed to accept as part payment of the sum owing to it by the land company, and thereupon the Union Trust Company released its lien upon the Carnegie avenue parcel.

The balance of the money remaining in its hands after the payment of certain obligations of the land company, was, upon its order, paid direct to the land company. In connection with the administration of that trust, the trustee issued an option certificate to

the Ontario Street Land Company, giving to that company the right to purchase certificates evidencing fractional interests upon the basis of $525 for each 1/456 fractional interest.

In the execution of its duties as trustee, the Union Trust Company, as trustee of that land trust issue, collected rentals from the property, disbursed them to certificate holders, and continued to do so until May 1, 1932, when the lessee discontinued the payment of rentals.

On June 15, 1933, the affairs of the Union Trust Company passed into the hands of the Superintendent of Banks, who, in February, 1934, resigned as trustee of the land trust issue, and, in pursuance of an order of court, conveyed the Carnegie avenue parcel to the Cleveland Trust Company as successor trustee.

There is a preliminary matter which, in view of the conclusions we have reached, may be of little importance; but perhaps something should be said in reference to it.

It is the claim of the defendant Superintendent of Banks that the circumstances are not such as to authorize the plaintiff to bring this action on behalf of other certificate holders—in other words, that this is not properly a class suit; and that in any event no relief can be granted in this suit to the members of the class other than the plaintiff, for the reason that they have never presented their claims to the Superintendent of Banks.

Assuming that individuals having separate claims against a banking corporation in process of liquidation, which claims arose by reason of an unauthorized or illegal act or proceeding and were not only legally separate but separate in time, can join in a suit based upon such claims because there is a community of interest among all the claimants in the question at issue and in the remedy, and assuming further that because, and solely because, of such community of interest

among them, one of them can prosecute a suit on behalf of himself and all others, did the plaintiff and those in whose behalf he brought the suit have a community of interest in the remedy sought?

The plaintiff determined for himself that it would be more advantageous to him to renounce his interest in the trust property and substitute therefor an interest as creditor in the assets of the former trustee, the bank in liquidation, but the other beneficiaries might not consider it to their interest to do likewise, and they had a right to determine that question for themselves. They had a right to oppose a dissolution of the trust if they chose to do so, and unless they joined as plaintiffs, they were *necessary* parties.

Plaintiff assumed to decide that question for the other beneficiaries by filing a claim for them against the liquidator, and bringing a suit in their behalf to accomplish the result which *he* desired. He had no right to do so.

It is one thing to bring a suit on behalf of one having a claim, but it is quite another and a different thing to file a claim for another without any authority from him to do so, and without the latter even knowing that the person filing the claim is assuming to act for him.

The principles underlying the authority of one person to bring a suit on behalf of another, have no application to the right of one person to take steps to perfect the claim of another person so as to be able to bring a lawsuit on behalf of such other person.

Where A has a claim which must be presented and rejected before he can bring a suit thereon, and B has a similar claim which must be presented and rejected before a suit thereon can be maintained, and the presentment of each of these claims involves a choice of the remedy to be sought, which remedy involves a renouncing of rights in certain property in order to claim rights in other property, to allow A, under such circumstances, to file a claim for himself and B, with-

out B's knowledge or consent, for the purpose of bringing a suit on behalf of himself and B, without any authority from B to do so, is against public policy. To allow him to do so has no legitimate connection with the matter of preventing a multiplicity of suits, but is in the nature of creating, or endeavoring to create, a cause of action for B, so as to ʻbring a suit in his behalf.

The right of the plaintiff, or any of those on behalf of whom he assumes to act, to sue the Superintendent of Banks, depends, as a prerequisite, upon the existence of their *respective* rights to share as creditors in the assets being administered by the Superintendent of Banks, and, under the statute, the right of plaintiff, and of each of those in whose behalf he brings this suit, to so share in such assets, depends upon whether the claim of plaintiff and the respective claims of each of those in whose behalf he brings suit, have been presented to and rejected by the Superintendent of Banks. The right to assert such a claim involves the renouncing of valuable rights and is an individual right of the plaintiff and of *each* of the parties in whose behalf the plaintiff assumes to bring the suit.

We know of no principle of law which, under such circumstances, gives to the plaintiff the right to file a claim for another without the knowledge and consent of such other.

None of the parties on behalf of whom plaintiff assumed to bring this suit filed claims with the Superintendent of Banks, and it does not appear that any of them authorized the plaintiff to file a claim for them or any of them, or had any knowledge that he assumed the right to do so.

In our view of the law, we would have no authority to grant any relief to any of the parties on whose behalf this suit was brought, other than plaintiff.

Plaintiff's other claims, reduced to their lowest common denominators, are that, because the Union Trust

Company held the legal title to the Carnegie avenue parcel and had a lien thereon for the repayment of the money owing to it from the Ontario Street Land Company, the trust company had such a substantial interest in the property as to incapacitate it to transfer the property to itself as trustee under the land trust indenture and issue land trust certificates thereon, even though it acted in the utmost good faith.

It is also claimed that the $240,000 loan of July 21, 1926, exceeded the legal limitations governing bank loans secured by mortgages upon real estate; and further that, through the sale of the property to the land trust, the Union Trust Company bailed itself out of an unlawful and excessive loan and one precariously secured.

The first claim is substantially predicated upon the assertion that this case falls within the rule laid down by the Supreme Court in *Ulmer* v. *Fulton, Supt. of Banks,* 129 Ohio St., 323, 195 N. E., 557, 97 A. L. R., 1170, paragraphs 2 and 3 of the syllabus. Those paragraphs state the following:

"2. The statutes of Ohio do not authorize a bank and trust company to act in the dual capacity of settlor and trustee by creating trusts out of its own securities and selling participation certificates therein to the public.

"3. Such undertakings are opposed to sound public policy, and are invalid."

Let us examine the case under consideration in the light of the pronouncement of the Supreme Court in the *Ulmer case.* There the trust company, a creature of statute, acted in the dual capacity of settlor and trustee in creating a trust out of its own securities and selling participation certificates therein to the public. The Supreme Court held that, under the statutes creating trust companies, no such authority was conferred upon the company by the statutes, and that the trust company was therefore disenabled to create

such a trust from its own securities, and to sell certificates therein to the public.

In the instant case the evidence discloses that the trust company did not own the property which constituted the corpus of the trust later created; that the equitable title thereto was in the real owner, the Ontario Street Land Company; and that the trust company merely held the legal title to the property as security for the obligation owing to it from the owner of the property.

The *Ulmer case, supra,*was decided upon the basis of the act of the trust company in creating a trust from its own securities being *ultra vires,* and the trust therefore void because beyond the statutory authority conferred upon the trust company. That conclusion had to do with the acts of the settlor of the trust. The instant case, upon the facts as we find them to be, does not present that question. Here, the question is whether the Union Trust Company, by holding the legal title to the premises in question as security for the repayment of its loan to the holder of the equitable title thereof, had such a substantial interest in the premises as to bring it within the rule announced by the Supreme Court in paragraphs 2 and 3 of the syllabus of the *Ulmer case, supra.*

The evidence indicates that, before the issuance of any land trust certificates by the trustee, a sum more than sufficient to accomplish a release of the lien of the Union Trust Company upon the premises, was paid into the escrow, of which the Union Trust Company was escrow agent; that when the sum of $150,000, upon the order of the Ontario Street Land Company, was paid to the Union Trust Company by itself as escrow agent, its lien upon the premises constituting the corpus of the trust was released and a certificate for the entire number of distributive shares (456) was issued by the trust company as trustee to the Ontario Street Land Company as beneficiary. Then, and then only, did

the land trust indenture become operative, for then a beneficiary of the trust came into being. A trust without a beneficiary is inoperative. I Restatement of the Law of Trusts, Section 112.

It is thus apparent that, at the time the trust in question became effective, the Union Trust Company had no interest in the premises which constituted the corpus of the trust, except as trustee under the indenture creating the trust. It therefore follows that the Union Trust Company was not guilty of self-dealing or of placing, in the trust, property which it owned or in which it had a substantial interest. Accordingly, the rule announced in the *Ulmer case, supra,* in paragraphs 2 and 3 of the syllabus, has no application to the facts here presented.

We are of the opinion that the section of the statute (Section 710-112, General Code) governing real estate mortgage loans by banks, has no application to the situation presented in this case, for the evidence clearly shows that this was not a mortgage loan but a collateral loan; and we might here observe that it is likewise our finding that the $240,000 loan, at the time it was made and at the time the trust was created, was adequately secured, according to the evidence.

The evidence also discloses that such acts as the Union Trust Company did in the creation of the land trust issue were done in pursuance of written instructions from the owner of the equitable title of the premises constituting the corpus of the trust property, and that the Union Trust Company did not create a trust out of its own property, in which trust it acted in the dual capacity of settlor and trustee.

It is obvious from an examination of the evidence that the Union Trust Company had no control over the type of certificates issued under the land trust issue, nor the price at which the certificates were sold to the ultimate purchasers; and we find nothing in the evidence warranting the assertion that Joseph R.

Nutt, president of the Union Trust Company, had any interest in the Ontario Street Land Company at the time of the creation of the trust in question which conflicted with the interest of the beneficiaries of the trust.

As conclusions of fact this court finds: First, that the Union Trust Company did not create the trust which is involved in this action; second, that the trust was created from the property of the Ontario Street Land Company and not from the property of the Union Trust Company; third, that the Union Trust Company did not participate in the sale of any interest in the land trust issue; fourth, that the Union Trust Company did not act in the dual capacity of settlor and trustee in the creation of a trust out of its own property; and fifth, that the transactions by the Union Trust Company of which complaint is made, were such as the Union Trust Company had the power to transact, and were performed by it in the usual course of its business, that it received therefor no compensation or profit except its usual charges for the services rendered, and that it acted in good faith.

As our conclusion of law, we hold that the plaintiff is not entitled to the relief prayed for in his petition.

The special master commissioner is allowed for his services the sum of $3,000, to be paid as a part of the costs; counsel for the parties to the suit having indicated to the court that, in their respective opinions, such an allowance would not be unreasonable.

An entry may be prepared overruling plaintiff's motion to confirm the special master commissioner's findings of fact and conclusions of law, finding the issues in this case in favor of the defendant Superintendent of Banks, and dismissing the petition of the plaintiff, at plaintiff's costs.

*Judgment for appellant.*

WASHBURN, P. J., and DOYLE, J., concur.

312

WASHBURN, P. J., DOYLE and STEVENS, JJ., of the Ninth Appellate District, sitting by designation in the Eighth Appellate District.